## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| DAMON NELSON | : | No. 15-388-1 |

## MEMORANDUM

PRATTER, J.                                                        JULY 30, 2021

Damon Nelson seeks compassionate release from prison under 18 U.S.C. § 3582(c)(1)(A)(i). Mr. Nelson's motion, which the Government opposes, is based on the COVID-19 pandemic and medical conditions that he believes place him at an increased risk of harm from the virus. For the reasons that follow, the Court denies the motion.

### BACKGROUND

**I.     Mr. Nelson's Criminal Conduct**

Mr. Nelson is currently serving a sentence for his role in an interstate bulk currency smuggling and drug trafficking conspiracy, which he conducted while serving probation for another crime. Mr. Nelson regularly transported thousands of dollars in cash from Philadelphia to Los Angeles in exchange for large quantities of cocaine and marijuana. Mr. Nelson paid couriers to move the drugs in suitcases, and bribed TSA employees to assist with moving the drugs safely through airport security. In the presentence report, the Government presented evidence establishing that Mr. Nelson trafficked between 1,000 and 3,000 kilograms of marijuana, and between 5 and 15 kilograms of cocaine. At the time he was indicted, Mr. Nelson was on probation after being convicted of a counterfeiting conspiracy in Montgomery County, Pennsylvania.

Mr. Nelson was indicted on August 19, 2015 with five drug trafficking counts, including conspiracy to distribute 5 kilograms or more of cocaine and 100 kilograms or more of marijuana,

1

two counts of possession with intent to distribute 500 grams or more of cocaine, and two counts of attempt to possess with intent to distribute 500 grams or more of cocaine. Mr. Nelson pled guilty to all counts, and entered into a plea agreement with the government, in which Mr. Nelson and the Government agreed that he should serve 120 months imprisonment. On February 23, 2017, the Court sentenced Mr. Nelson to 120 months imprisonment, followed by 5 years of supervised release.

Mr. Nelson is serving his sentence at FCI Fort Dix, and has an anticipated release date of November 7, 2025. He has served 51 months and has credit for good conduct time of approximately 6 months, for total time served of approximately 57 months. He has not incurred any disciplinary infractions during his time in custody.

## II.    Mr. Nelson's Request for Compassionate Release

The Government does not contest that Mr. Nelson properly exhausted his administrative remedies before filing his motion with this Court.[1] Mr. Nelson's medical records show that he is 38 years old and, based on his height and weight, has a body mass index of around 27,[2] which is defined by the Centers for Disease Control and Prevention (CDC) as overweight (a BMI greater than 25 but less than 30).[3] He had prior surgeries for a cyst and gastrointestinal issues, which requires him to use a colostomy bag. Mr. Nelson was prescribed oxycodone for pain management.

---

[1]    While the Government could find no evidence that Mr. Nelson exhausted his remedies by filing a request for a reduction in sentence with the warden, the Government writes that it gives Mr. Nelson the "benefit of the doubt" and does not contest that he met the exhaustion requirement. Therefore, the Court will do the same.

[2]    This information is only contained in Mr. Nelson's memorandum. The Government does not address Mr. Nelson's argument that he is overweight, and therefore does not dispute this representation. The Court has reviewed Mr. Nelson's medical records, and can find no entry documenting his weight. The Court accepts Mr. Nelson's representation that his BMI is around 27.

[3]    *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention (May 13, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 29, 2021).

He also claims that he has back issues which required surgery in the past, but this problem does not appear in his medical records.

Mr. Nelson tested positive for COVID-19 on April 24, 2020; his medical records show that he experienced no symptoms.[4]  He again tested positive for COVID-19 on January 6, 2021, and his medical records show that he told medical staff that he had no symptoms.  Nevertheless, in his motion, Mr. Nelson alleges that when he was infected in April 2020, he suffered shortness of breath and had chills.  He also alleges that when he was infected in January 2021, the infection "severely weakened" him.

Mr. Nelson receives regular treatment for his gastrointestinal issues, and is routinely evaluated by prison medical personnel.  He is fully ambulatory and engages in the normal activities of daily living within his facility.

Mr. Nelson moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  He relies on his overweight status, his gastrointestinal issues, and his confinement at FCI Fort Dix, which he argues subjects him to a high risk of infection.

## III.   BOP's Response to the COVID-19 Pandemic

The Bureau of Prisons ("the BOP") has stated that its "highest priority [is] to continue to do everything [it] can to mitigate the spread of COVID-19 in [its] facilities,"[5] and it has adopted significant measures to protect the health of the inmates in its charge.  These measures include severely curtailing visitation, limiting the movement of inmates, paying special attention to physical distancing, and screening and isolating new inmates.  As directed by the Attorney

---

[4]      The Government disputes that Mr. Nelson tested positive for COVID-19 in April 2020.
However, the Court has reviewed Mr. Nelson's medical records, and can see that he did indeed test positive, and was kept in isolation from sometime in April 2020 until July 15, 2020.
[5]      BOP, *BOP Modified Operations* (last updated Nov. 25, 2020),
https://www.bop.gov/coronavirus/covid19_status.jsp (last visited July 29, 2021).

General, the BOP is also prioritizing the use of statutory authority to place eligible prisoners in home confinement.[6]  Pursuant to the Coronavirus Aid, Relief, and Economic Security (CARES) Act, the BOP may also "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" in the event the Attorney General finds that emergency conditions will materially affect the functioning of the BOP.  Pub. L. No. 116-136 § 12003(b)(2).  In April 2020, the Attorney General gave the Director of the BOP the authority to exercise this discretion, beginning with facilities that had seen the greatest incidence of COVID-19 transmission thus far.  The BOP has also undertaken efforts to vaccinate its staff members as well as all inmates.  *See United States v. Roper*, No. 16-cr-335, 2021 WL 963583, at *3 (E.D. Pa. Mar. 15, 2021) ("Since the vaccines became available, the Bureau of Prisons diligently and efficiently administered the doses allocated to it, leading all jurisdictions and Federal entities in its vaccine utilization rate.").

Mr. Nelson is currently housed at FCI For Dix—a low security correctional institution with 2,879 inmates.[7]  Currently, there are zero COVID-positive inmates and one COVID-positive staff member there.[8]  However, over the course of the pandemic, 1,711 inmates and 95 staff members have recovered from the illness.[9]  One inmate and two staff members died from the virus at FCI Fort Dix.[10]  Furthermore, the BOP has thus far fully vaccinated 254 staff members and 1,737

---

[6]     This authority includes the ability to place an inmate in home confinement during the last six months or the remaining 10% of a sentence, whichever is shorter, and to move elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g) to home confinement. 18 U.S.C. § 3624(c)(2).

[7]     *See* FCI Fort Dix, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/ftd/ (last visited July 29, 2021).

[8]     The data is current as of July 29, 2021, according to the BOP website, available at https://www.bop.gov/coronavirus/.

[9]     *Id.*

[10]    *Id.*

inmates, which represents about 60% of the complex's inmate population—not accounting for those inmates who have declined vaccination.[11]

## LEGAL STANDARD

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007). A defendant can move to reduce his or her term of imprisonment under 18 U.S.C. § 3582(c)(1)(A). In order to do so, the defendant must first request that the BOP file a motion on his or her behalf, which can only occur after the inmate has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

In the event the moving defendant complies with the exhaustion requirement,[12] a court may reduce the term of imprisonment if it finds that extraordinary and compelling reasons warrant such a reduction and that the reduction is consistent with the Sentencing Commission's applicable policy statements[13] but only after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable.

---

[11]   *Id.*

[12]   As stated above, the Government accepts that Mr. Nelson has properly exhausted his administrative remedies.

[13]   Despite § 3582(c)(1)(A) mandating that a reduction in sentence be "consistent with applicable policy statements issued by the Sentencing Commission," the Court recently concluded that "the policy statement is now clearly outdated" in light of the Sentencing Commission's failure to update its policy statement to account for the changes imposed in light of the amendment to § 3582(c)(1)(A) by the First Step Act of 2018. *United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. 2020). Therefore, although the policy statement undoubtedly provides helpful guidance, it "does not limit the Court's independent assessment of whether 'extraordinary and compelling reasons' exist under § 3582(c)(1)(A)(i)." *Id.* at 398.

Moreover, there is a growing consensus among the circuit courts that the policy statement does not limit the Court's discretion to consider compassionate release under the First Step Act. *See, e.g.*, *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 281

A court considers multiple factors under 18 U.S.C. § 3553(a), including, among other things, (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; and (4) "the need for the sentenced imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." The defendant bears the burden of showing that a reduction in sentence is proper. *United States v. Adeyemi*, 470 F. Supp. 3d 489, 512 (E.D. Pa. 2020).

## DISCUSSION

Mr. Nelson argues that he should be immediately released under 18 U.S.C. § 3582(c)(1)(A)(i) because of certain medical conditions which place him at increased risk of harm if he contracted COVID-19. He argues that he has four medical conditions warranting compassionate release: (1) being overweight, (2) multiple gastroenterological surgeries, (3) "back issues," and (4) two prior cases of COVID-19.

The Court finds that none of these conditions entitle Mr. Nelson to compassionate release. The Centers for Disease Control and Prevention (CDC) has deemed certain people with specific underlying medical conditions and the elderly to be at a heightened risk of severe illness or death from COVID-19.[14] The CDC lists being overweight as a condition that can make a person more likely to become severely ill from COVID-19.[15] To be sure, this Court is not bound by the CDC's guidelines. But this Court, like many other district courts, has considered CDC guidance as

---

(4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 117, 1180 (7th Cir. 2020).

[14]   *See People at Increased Risk*, Centers for Disease Control and Prevention (Apr. 20, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 29, 2021).

[15]   *Id.*

reliably informative. *See United States v. Perri*, No. 15-cr-486, 2020 WL 6324384, at *2 (E.D. Pa. Oct. 28, 2020) (listing cases).

The only one of Mr. Nelson's conditions to be classified by the CDC as placing an individual at a higher risk from COVID-19 is his BMI of 27.  As the Government correctly notes, the CDC has never concluded that gastrointestinal issues or the use of a colostomy bag puts a person at any higher risk of becoming seriously ill from COVID-19, and Mr. Nelson introduces no evidence showing how this impacts his ability to withstand a COVID-19 infection.  Nor has Mr. Nelson explained how his unspecified back issues would make him more likely to experience a severe illness as a result of COVID-19 exposure or infection.  Mr. Nelson has not cited any case granting compassionate release to a defendant who recovered from COVID-19 and was asymptomatic.  To the contrary, the consensus is that such a circumstance does not warrant release. *See, e.g., United States v. Norcross*, No. 8:05-cr-291-T-02JSS, 2020 WL 5076578, at *2 (M.D. Fla. Aug. 27, 2020) (denying motion for release where defendant had hypertension and recovered from COVID-19); *United States v. Peuse*, No. 17-CR-00598-LHK, 2020 WL 5076356 (N.D. Cal. Aug. 24, 2020) (collecting cases).

That leaves Mr. Nelson's BMI of 27 as the only condition making Mr. Nelson more likely to become severely ill from COVID-19.  According to the CDC, being overweight, defined as a BMI between 25 and 30, is a condition that might increase a person's risk.[16]  But a qualifying medical condition, as detailed in the above guidelines policy statement, is only one in which the inmate is "not expected to recover."  And, in general, courts have been reluctant to grant compassionate release based solely on obesity—let alone the lesser category of being overweight.

---

[16]    *See People at Increased Risk*, Centers for Disease Control and Prevention (Apr. 20, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 29, 2021).

*See United States v. Bell*, No. 09-cr-672-1, 2021 WL 1839523, at *3 (E.D. Pa. May 7, 2021) ("Other courts have consistently held that, in isolation, neither moderate obesity nor high blood pressure warrant compassionate release."); *United States v. Williams*, No. 15-cr-471-3, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020) ("[O]besity during the age of the COVID-19 pandemic does not necessarily mean, on its own, that extraordinary and compelling reasons justify the reduction of his sentence."); *United States v. Grasha*, No. 18-cr-325, 2020 WL 5747829, at *5 (W.D. Pa. Sept. 24, 2020) (finding defendant's obesity and BMI of 48, while presenting a serious risk, did "not arise to an extraordinary and compelling reason for release"). Mr. Nelson's medical conditions and history do not present an extraordinary and compelling reason for his compassionate release.

But even if Mr. Nelson presented an extraordinary and compelling reason to warrant release, the 18 U.S.C. § 3553(a) factors counsel against releasing him. *See United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) (affirming denial of compassionate release to inmate with "serious" health conditions because "the § 3553(a) factors weigh[ed]" against release). Although Mr. Nelson's crimes were not crimes of violence per se, they were not mere momentary unfortunate lapses in judgment. Rather, Mr. Nelson was involved in a conspiracy to transport enormous quantities of drugs across the country, using tactics that included bribing government officials. Moreover, this was not Mr. Nelson's first conviction. He was on probation when he was indicted for the offense he is currently serving a sentence for at FCI Fort Dix. While the Court is encouraged to hear that Mr. Nelson believes that he has demonstrated active growth towards rehabilitation, including by completing a drug education course, this alone does not warrant release. Mr. Nelson has served only 57 months of a 120-month sentence: still less than half of his sentence. Even if this Court was inclined to conclude that he has rehabilitated, release under these

circumstances would not deter future criminal conduct, promote respect for the law, or reflect the seriousness of Mr. Nelson's offense. *See, e.g.*, *United States v. Morales-Ortiz*, No. 11-cv-143, 2021 WL 65477, at *5 (E.D. Pa. Jan. 7, 2021) (denying relief for 61-year-old inmate notwithstanding BMI of 30.1 and hypertension; release after 139 months of 180-month sentence would not align with the § 3553(a) factors); *United States v. Robinson*, No. 15-cv-496, 2020 WL 7056488, at *3 (E.D. Pa. Dec. 2, 2020) (denying motion for compassionate release notwithstanding obesity (BMI of 40.4) and prediabetes, reasoning that "releasing Robinson after fifty-seven months [of 120-month term] would fail to reflect the seriousness of conspiring to sell and personally distributing large quantities of PCP" and would cause unwarranted sentence disparities).

CONCLUSION

For the foregoing reasons, the Court denies Mr. Nelson's motion for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i). An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE